# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| NAZAR SIMKO, et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:15-CV-00036 (JCH) |
| | : | |
| BOARD OF IMMIGRATION APPEALS, | : | |
| et al., | : | DECEMBER 30, 2015 |
| Defendants. | : | |
| | : | |

### RULING RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 26) AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27)

## I.    INTRODUCTION

This case concerns the denial of a Form I-130 Petition for Alien Relative ("I-130 Petition") filed by plaintiff Karolina Simko on behalf of plaintiff Nazar Simko.  See Compl. at 1 ¶ 1 (Doc. No. 1).  Karolina Simko's I-130 Petition was denied by United States Citizenship and Immigration Services, and that decision was affirmed by the Board of Immigration Appeals (collectively, "the agency").[1]  See id.  Plaintiffs seek review of the agency's decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  See Compl. at 2 ¶ 4 (Doc. No. 1).[2]

---

[1] Although a BIA decision is ordinarily "the basis for judicial review of the decision of which [a plaintiff] is complaining," when the BIA effectively adopts and supplements the initial decisionmaker's decision, the reviewing court may review the initial decision "as supplemented by the BIA."  Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005).  In the present case, the BIA affirmed USCIS's initial decision with little independent analysis.  See Administrative Record ("A.R.") 4-5 (BIA decision); A.R. 6-10 (USCIS denial).  Thus, the court will review the USCIS decision as supplemented by the BIA.

[2] At oral argument, plaintiffs conceded that they have only pled claims under the APA. Specifically, plaintiffs have not pled, and do not claim, a violation of their due process rights under the United States Constitution.

The parties have filed opposing Motions for Summary Judgment.  See Pls.' Mot. for Summ. J. (Doc. No. 26); Defs.' Mot. for Summ. J. (Doc. No. 27).  For the reasons set forth below, plaintiffs' Motion for Summary Judgment (Doc. No. 26) is **GRANTED**, and defendants' Motion for Summary Judgment (Doc. No. 27) is **DENIED**.

## II.    FACTUAL BACKGROUND[3]

Plaintiff Nazar Simko ("Simko") is a native and citizen of Ukraine.  See Pls.' L.R. 56(a)1 Stmt. at 1 ¶ 5 (Doc. No. 26-1).  He arrived in the United States in 2001 as a visitor with permission to remain for a period of six months.  Id. at 1 ¶ 6.  Simko has remained in the U.S. beyond this six-month period without authorization.[4]  See A.R. 546.

On April 10, 2006, Simko married Sherrie Terry ("Terry"), a U.S. citizen.  See A.R. 85.  Terry filed an I-130 Petition on behalf of Simko on August 15, 2006.  See A.R. 267-68.  On the same day, Simko filed a Form I-485, Application to Register Permanent Residence or Adjust Status.  See A.R. 559-62.

The United States Citizen and Immigration Services ("USCIS") held interviews with Terry and Simko regarding their I-130 Petition and I-485 Application on April 19, 2007.  See A.R. 341.  The interviewing officer noted that there were "no discrepancies in [their] answers" to the interview questions, but that Terry and Simko had "no joint info[rmation]," as neither of them worked and they lived with Terry's mother.  Id.  The

---

[3] These facts are taken from the parties' memoranda, exhibits, and affidavits related to the pending Motions for Summary Judgment, as well as the Administrative Record of the agency proceedings.  The parties do not dispute the genuineness of the Administrative Record, see Pls.' L.R. 56(a)2 Stmt. at ¶ 1 (Doc. No. 32-1), and the facts in this section, unless otherwise noted, are not in dispute.

[4] Simko has been in removal proceedings since 2007, A.R. 546, and his appeal of the BIA's removal order is pending before the Second Circuit.  See Simko v. Lynch, No. 15-2093.  Simko's pending removal is not at issue in this case.

officer also noted that, although Simko said he met Terry and began his relationship with her while he was in Ohio to visit a friend named Alex, Simko could not remember Alex's last name.  See A.R. 564.  With respect to Terry's answers, the officer noted that Terry reported that she had not signed any immigration-related paperwork for Simko.  See A.R. 342.  However, when the officer showed Terry the I-130 Petition that had been submitted on Simko's behalf, she confirmed that her signature was on the document.  See id.  Terry told the officer that she had not known about Simko's immigration status at the time of their marriage and, that if she had been aware of his immigration situation, she would not have married him.  See id.

Following the interviews with Terry and Simko, USCIS sent Simko and Terry separate requests for additional information, including an affidavit from Terry's mother attesting that Simko and Terry resided with her, as well as additional documentation of the bona fide nature of Terry's and Simko's marriage.  See A.R. 263-64, 665-66.  Simko did not provide all of the requested information, however, and his I-485 Application was denied due to abandonment in August 2007.  See A.R. 555-56.  At that same month, a USCIS officer drafted a Fraud Referral Sheet related to Terry's I-130 Petition and Simko's I-485 Application.  See A.R. 326-29.  It is not clear whether the Fraud Referral Sheet was ever submitted but, if it was, it does not appear that the Fraud Detection and National Security Directorate ("FDNS") took further action on it at that time.  See A.R. 329-30.  Like Simko, Terry failed to provide the information and documentation requested by USCIS and, as a result, her I-130 Petition was denied due to abandonment in November 2007.  A.R. 265-66.  Simko initiated divorce proceedings

3

against Terry in Connecticut in late 2008, and their divorce was finalized in April 2009. See A.R. 523.

In February 2009, before his divorce from Terry was finalized, Simko submitted an I-360 Petition seeking classification as the self-petitioning spouse of an abusive U.S. citizen. See A.R. 399-404. Simko's I-360 Petition triggered further investigation by USCIS and FDNS for possible marriage fraud. See A.R. 301-06. The USCIS officer who conducted the investigation compiled her findings into a Summary of Findings ("the Salyer Report"), which is part of the Administrative Record in this case. See id. The Salyer Report states that a record check as part of the fraud investigation revealed that Terry had "been identified as a participant in a marriage fraud ring" operating in Cincinnati and northern Kentucky. A.R. 304. The marriage fraud ring with which Terry was connected often worked by matching "Eastern European males living in the Northeastern part of the US" with "young United States Citizen females from the Cincinnati or Northern Kentucky region." A.R. 304-05. Furthermore, the Salyer Report noted that the pastor who performed Simko's marriage to Terry solemnized at least one other marriage connected to the fraud ring. See A.R. 305. On the basis of these and other facts, the Salyer Report concluded that it "is probable that SUBJECT SIMKO was a willing participant, if not the main perpetrator of the marriage fraud in this instance." A.R. 301.

In September 2010, USCIS asked Simko for additional documentation related to his I-360 Petition, including proof of the bona fide nature of his marriage to Terry. See A.R. 497-502. In response, Simko submitted a collection of affidavits and photographs. See A.R. 504-18. USCIS denied Simko's I-360 Petition in May 2011 for, among other

4

things, failure to demonstrate that he entered into his marriage with Terry in good faith.
See A.R. 343-46.

In June 2011, Simko married Karolina Simko, the second plaintiff in this matter.
See A.R. 241.  The parties agree that Simko's marriage to Karolina Simko is <u>bona</u> <u>fide</u>.
Mem. of Law in Supp. of Defs.' Mot. for Summ. J. at 12 (Doc. No. 27-1).  Karolina
Simko, who is a United States citizen, filed an I-130 Petition on behalf of Simko shortly
after their marriage.  <u>See</u> A.R. 110-12.  Nazar and Karolina Simko were interviewed by
USCIS in May 2012 regarding the I-130 Petition filed by Karolina Simko.  <u>See</u> A.R. 294-
95.  After that interview, an officer with USCIS filled out another Fraud Referral Sheet
related to Simko's prior marriage to Terry, but FDNS indicated that there was a
"previous entry" on this matter and does not appear to have taken further action.  A.R.
291-93.  In April 2013, USCIS issued a Notice of Intent to Deny ("NOID") Karolina
Simko's I-130 Petition because Nazar Simko's marriage to Terry was fraudulent.  <u>See</u>
A.R. 376-80.  Karolina Simko was given thirty days to submit evidence to rebut the
agency's conclusion that Simko's marriage to Terry was a sham.  <u>See</u> A.R. 380.

In response to USCIS's NOID, Karolina Simko submitted a packet of documents,
including the following:

- Affidavits from Simko, his parents, Terry, Terry's mother, and Terry's sister;

- Simko's and Terry's marriage license;

- Photographs showing Simko's and Terry's wedding;

- Sprint phone bills in Simko's name that were mailed to Terry's mother's address
  in Ohio;

- Two Western Union money transfers (one for $150 and a second for $30) sent from Simko to Terry in March 2008;

- A letter from a care facility confirming Terry was in treatment and counseling for opiate dependency; and

- Additional photographs of a group of people, including Simko, Terry, and Terry's daughter, on a couch.[5]

See A.R. 52-72.  After review, USCIS denied Karolina Simko's I-130 Petition on the grounds that the evidence submitted failed to rebut the agency's conclusion that Simko's marriage to Terry was a sham.  See A.R. 6-10.  Karolina Simko appealed to the Board of Immigration Appeals ("BIA").  See A.R. 12-19.  The BIA summarily affirmed USCIS's decision in December 2014.  See A.R. 4-5.  This case followed.

## III.    STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial,"

---

[5] In the NOID, the agency requested nine types of evidence related to the legitimacy of Simko's marriage to Terry.  See A.R. 45-46.  The evidence submitted by Karolina Simko to rebut the agency's conclusion that the marriage was fraudulent effectively provided, or explained the absence of, eight of the nine types of evidence requested.  See A.R. 52-72.  The single piece of evidence requested by the agency that is arguably missing, without explanation, from Karolina Simko's rebuttal submission is "[e]vidence of ongoing correspondence between Nazar Simko and Sherrie Terry."  A.R. 46.  However, the NOID makes clear that the list of requested evidence is merely illustrative of the kinds of submissions that would be helpful to the agency.  See A.R. 45 (noting that evidence to establish the legitimacy of the marriage "may include, but is not limited to" the subsequent list).  In sum, Karolina Simko's rebuttal submission included or addressed nearly every kind of evidence listed by the agency in the NOID.

Anderson, 477 U.S. at 256, and present such evidence as would allow a jury to find in his favor.  See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address whether there are material issues of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.    DISCUSSION

At oral argument, the parties agreed that there is no dispute about the genuineness of the Administrative Record submitted by defendants in connection with this case.  See also Pls.' L.R. 56(a)2 Stmt. at 1 ¶ 1 (Doc. No. 32-1).  Thus, the court's consideration of the parties' cross-Motions for Summary Judgment will focus on the legality of the agency decisions in this case, not on the existence or nonexistence of disputed issues of material fact.

### A.    Governing Law (Judicial Review)

At the outset, the court must determine the appropriate standard of review for analyzing the actions of the agency.  Section 706(2) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions" that the court finds to be problematic.  5 U.S.C. § 706(2).  The exact

standard the court must use when assessing agency action varies with the nature of the action taken by the agency.  See id.  In this case, the parties disagree about whether the proper standard for reviewing the agency's action is provided by section 706(2)(A) ("arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") or section 706(2)(E) ("unsupported by substantial evidence").  Id.

The arbitrary and capricious standard of section 706(2)(A) is available for a court to use when analyzing any final agency action that is subject to judicial review.  See Karpova v. Snow, 497 F.3d 262, 267 (2d Cir. 2007) (noting that section 706(2)(A) applies to "any agency action").  In contrast, the substantial evidence standard of section 706(2)(E) only applies to a "case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute."  5 U.S.C. § 706(2)(E); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971) ("Review under the substantial-evidence test is authorized only when . . . the agency action is based on a public adjudicatory hearing." (internal citations omitted)).  Sections 556 and 557 of the APA provide formal procedures to which an agency must adhere when the matter before the agency is "required by statute to be determined on the record after opportunity for an agency hearing."  5 U.S.C. § 554(a); see also Ardestani v. I.N.S., 502 U.S. 129, 132-33 (1991) (noting that sections 556 and 557 set forth the "formal adjudication requirements" of the APA).  In sum, then, the substantial evidence test of section 706(2)(E) is only applicable to judicial review of agency action taken after a formal hearing on the record.  Cf. Nat'l Nutritional Foods Ass'n v. Weinberger, 512 F.2d 688, 700 (2d Cir. 1975) ("Section 706(2)(E) is restricted to agency action in which an evidentiary hearing is required.").

8

Although the parties argue that different courts have used both the substantial evidence standard and the arbitrary and capricious standard to review agency denials of I-130 Petitions, which standard is applicable is a function of the procedures provided by the statutes governing the agency's actions.  See 5 U.S.C. § 706(2)(E) (noting that the agency hearing triggering the substantial evidence standard must be "provided by statute"); 5 U.S.C. § 554(a) (noting that the formal adjudicatory procedures of sections 556 and 557 are triggered when the underlying statute requires that the matter "be determined on the record after opportunity for an agency hearing").  The agency's decision to deny Karolina Simko's I-130 Petition was action taken pursuant to section 1154 of title 8 of the United States Code.  See A.R. 4.  Section 1154 provides that, "[a]fter an investigation of the facts in each case" in which an I-130 Petition is submitted, "the Attorney General shall, if he determines that the facts stated in the petition are true . . . approve the petition and forward one copy thereof to the Department of State."  8 U.S.C. § 1154(b).  Section 1154 does not provide for a hearing on the record or for any other kind of formal procedure; "an investigation of the facts in each case" by the Attorney General is all that is guaranteed to applicants.  Id.; see also Ching v. Mayorkas, 725 F.3d 1149, 1154 (9th Cir. 2013) (noting that there is no statutory right to an adjudicatory hearing under section 1154); Maggiore Bakery, Inc. v. Esperdy, 238 F. Supp. 374, 375 (S.D.N.Y. 1964) (same).

Plaintiffs' argument that the substantial evidence standard is nonetheless appropriate because there was a hearing in this case—"namely an interview before a USCIS officer on May 23, 2012," Opp'n to Defs.' Mot. for Summ. J. at 2 (Doc. No. 32)— is not to the contrary.  The Supreme Court has recognized that there are many different

kinds of hearings, and even when there is a statutorily-provided right to a hearing, that hearing right will not always trigger the applicability of formal procedures pursuant to sections 556 and 557 of the APA.  See United States v. Florida East Coast Ry. Co., 410 U.S. 224, 237-39 (1973) (noting that the term "hearing" has a host of meanings and finding that the requirement that an agency action take place "after hearing" was not sufficient to "trigger the applicability of [sections] 556 and 557" of the APA).  A separate section of the APA, section 555, provides minimal protections accorded to participants in informal adjudications by administrative agencies.  See 5 U.S.C. § 555(b) (providing, among other things, that "[a] person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel"); see also Pension Ben. Guar. Corp. v. LTV Corp., 496 U.S. 633, 655 (1990) (noting that the minimal requirements for informal agency adjudications are set forth in section 555).  Informal agency adjudications are reviewable under the arbitrary and capricious standard.  See 5 U.S.C. § 706(2); New York Institute of Dietetics, Inc. v. Riley, 966 F. Supp. 1300, 1310-11 (S.D.N.Y. 1997).  Therefore, even if plaintiffs' interactions with the agency are fairly characterized as a hearing, that fact alone is insufficient to trigger the application of the substantial evidence standard.

In sum, because section 1154 does not provide a hearing right to persons seeking approval of I-130 Petitions, see 8 U.S.C. § 1154(b), and the Administrative Record in this case does not support the view that plaintiffs were nonetheless accorded a formal evidentiary hearing on their Petition, see A.R. 294-95, the substantial evidence

standard of section 706(2)(E) is not the appropriate standard of review for this matter. The court will apply the arbitrary and capricious standard of section 706(2)(A).[6]

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). "[S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action . . . ." Karpova, 497 F.3d at 268. If, however, the agency decision "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decision must be set aside. Westchester v. U.S. Dept. of Housing and Urban Development, 802 F.3d 413, 431 (2d Cir. 2015)

---

[6] At oral argument, plaintiffs conceded that, although they believe the substantial evidence test is the appropriate standard, the standard applied by the court likely would not have much of an effect on the outcome of this case. Defendants also conceded at oral argument that there may not be a meaningful difference between the two standards in this context. See also Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp.") at 2 n.1 (Doc. No. 33) ("Both the 'arbitrary and capricious' and the 'substantial evidence' standards are lenient, and courts have questioned whether there is any meaningful distinction between those two standards when used to determine the adequacy of factual support for an agency's actions.").

Although the court is persuaded that the arbitrary and capricious standard is the appropriate one to use in assessing the agency's actions in the present case, the court agrees that the difference between the arbitrary and capricious and substantial evidence standards in this context is slight, if a meaningful difference exists at all. See, e.g., Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Reserve System, 745 F.2d 677, 684 (D.C. Cir. 1984) (noting that "the distinction between the substantial evidence test and the arbitrary or capricious test is largely semantic" (internal quotations and citation omitted)). It is perhaps for this reason that the Second Circuit has applied both the arbitrary and capricious test and the substantial evidence test to review of an agency's denial of an I-130 Petition without appearing to engage with the question of which standard of review is appropriate. Compare Berrios v. Holder, 502 Fed. Appx. 100, 101 (2d Cir. 2012) (applying the arbitrary and capricious standard when reviewing an agency's denial of an I-130 Petition), with Koffi v. Holder, 487 Fed. Appx. 658, 660 (2d Cir. 2012) (appearing to apply the substantial evidence standard when reviewing an agency's denial of an I-130 Petition).

(internal quotations and citation omitted); see also Berrios v. Holder, 502 Fed. Appx. 100, 101 (2d Cir. 2012).

     B.    I-130 Petitions and the Marriage Fraud Bar

     The agency action contested by the plaintiffs in this case relates to an I-130 Petition filed by Karolina Simko.  Under section 1154 of title 8 of the United States Code, U.S. citizens may file such petitions on behalf of their immediate relatives. Immediate relatives are defined as the "children, spouses, and parents" of the citizen filing the I-130 Petition.  8 U.S.C. § 1151(b)(2)(A)(i).  Receiving immediate relative classification pursuant to an I-130 Petition is advantageous because the visas for individuals classified as immediate relatives "are not subject to the worldwide levels or numerical limitations" on immigration prescribed by statute.  Id. at § 1151(b).

     Once an I-130 Petition has been filed with USCIS, the agency is directed to conduct "an investigation of the facts in each case," and, "if [the agency] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition and forward one copy thereof to the Department of State."  8 U.S.C. § 1154(b).  However, the agency is not permitted to approve an I-130 Petition if:

> (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).  In other words, the agency is statutorily barred from approving any I-130 Petition filed on behalf of a non-citizen who has conspired or actually entered into

a sham marriage for purposes of obtaining an immigration-related benefit.  See id.; see also Samsundar v. Mukasey, 296 Fed. Appx. 106, 107 (2d Cir. 2008).

The fraudulent marriage bar of section 1154(c) is very serious, as it is nonwaivable and perpetual in duration.  See 8 U.S.C. § 1154(c).  Therefore, even though the I-130 petitioner carries the ultimate "burden of proving the beneficiary's visa eligibility," Bourisquot v. Holder, 569 Fed. Appx. 35, 36 (2d Cir. 2014), agency regulations require the investigating officer to identify "substantial and probative evidence" of the attempt or conspiracy to enter into a marriage for purposes of evading the immigration laws for the fraudulent marriage bar of section 1154(c) to apply.  8 C.F.R. § 204.2(a)(1)(ii).  Substantial and probative evidence requires more than facts that could create a reasonable inference of fraud, see Matter of Tawfik, 20 I. & N. Dec. 166, 168, 1990 WL 385753 (BIA 1990), but is something less than a preponderance of the available evidence, see Alvarado-Carillo v. I.N.S., 251 F.3d 44, 49 (2d Cir. 2001) ("Substantial evidence . . . is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotations and citation omitted)).  In addition, "[a]lthough it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file."  8 C.F.R. § 204.2(a)(1)(ii); see also Matter of Tawfik, 20 I. & N. Dec. at 170 (noting that evidence of non-citizen's attempt to evade immigration laws through a sham marriage must be contained in the non-citizen's file).

Once the investigating officer has identified substantial and probative "evidence in the record to indicate that the beneficiary has been an active participant in a marriage

fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage."  Matter of Kahy, 19 I. & N. Dec. 803, 806-07, 1988 WL 235464 (BIA 1988); see also Bourisquot, 569 Fed. Appx. at 36 (noting that the burden is on the petitioner to "rebut any evidence of marriage fraud 'in the alien's file' with proof that the prior marriage was bona fide, i.e., not fraudulent." (citations omitted)).

C.     Analysis

The question of whether the agency acted arbitrarily and capriciously when it denied Karolina Simko's I-130 Petition on behalf of Nazar Simko has two parts.  First, the court must determine whether it was arbitrary and capricious for the agency to conclude that there was "substantial and probative evidence" in Nazar Simko's file that Simko's marriage to Terry had been entered into for purposes of evading the immigration laws.  8 C.F.R. § 204.2(a)(1)(ii); see A.R. 4.  Second, the court must assess whether it was arbitrary and capricious for the agency to determine that the evidence subsequently submitted by Karolina Simko failed to rebut the agency's conclusion that the marriage between Simko and Terry was not bona fide.  See A.R. 4-5.  The court will consider each question in turn.

1.     Substantial and Probative Evidence of Marriage Fraud

The agency acted arbitrarily and capriciously when it concluded that there was substantial and probative evidence in Simko's file that his marriage to Terry was a sham.  The key piece of evidence cited by the agency for the proposition that Simko's marriage to Terry was fraudulent—namely that Terry "was identified by USCIS investigators as well as agents of Immigration and Customs Enforcement (ICE) as one

14

of many participants in a Cincinnati, Ohio, marriage fraud ring," A.R. 7—is not directly connected to Simko at all.  It was Terry's name, not Simko's name, that produced the "hit" in the records search conducted by the fraud investigator.  A.R. 304.  Furthermore, there are no temporal markers in the Salyer Report related to this "hit," meaning that Terry could have been recruited for the marriage fraud ring at a time before or at a time after she met and married Simko.  See id.  Put another way, the fact that Terry was recruited for a marriage fraud ring at some point does not establish that her subsequent marriage to Simko was fraudulent.[7]  More evidence is required for the agency rationally to have concluded that there was "substantial and probative evidence," contained in Simko's file, that he entered into his marriage with Terry "for the purpose of evading the immigration laws."  8 U.S.C. § 1154(c).

The agency's Notice of Intent to Deny ("NOID") plaintiffs' I-130 Petition does cite additional evidence in support of the agency's conclusion that Simko's marriage to Terry was fraudulent, which includes:

- The fact that Simko completed necessary medical examinations and immigration paperwork in close proximity to the date of his wedding;

- The fact that Simko gave a Connecticut address instead of an Ohio address on a medical form a few days prior to his wedding;

- The fact that neither Simko nor Terry provided all of the requested documentation of the bona fide nature of their relationship when asked to do so in connection with their I-130 and I-485 Petitions;

---

[7] There are multiple scenarios the court could imagine that would result both in Terry's name showing up in connection with a marriage fraud ring and in her marriage to Simko being bona fide. Perhaps the most straightforward is that Terry was, in fact, recruited for the marriage fraud ring, but she did not go through with a fraudulent marriage because she met and fell in love with Simko, instead.

15

- The fact that Terry and Simko matched the demographic profiles of people involved in the Ohio/Kentucky marriage fraud ring; and

- The fact that Terry and Simko provided vague information about how they met and the details of their relationship.

See A.R. 75-76.  Notably missing from the evidence cited by the agency, however, is any direct, affirmative evidence that Simko's marriage to Terry was fraudulent.  In this regard, the court notes that the Salyer Report is not itself, and does not contain, direct evidence that Simko's marriage to Terry was fraudulent.  See A.R. 301-06.  Rather, the Salyer Report is direct evidence that Terry was identified as a participant in a marriage fraud ring, see A.R. 304, from which the agency inferred that Simko's marriage to Terry was fraudulent.  See A.R. 75.  The fact that the Salyer Report does not contain direct evidence that Simko's marriage to Terry was fraudulent is perhaps the reason the Report declines to conclude, in definitive terms, that Simko's marriage to Terry was fraudulent, instead stating that "it appears likely that SUBJECT SIMKO was involved in marriage fraud" and that "[i]t is probable that SUBJECT SIMKO was a willing participant, if not the main perpetrator of the marriage fraud in this instance."  A.R. 301 (emphasis added).

In sum, all of the evidence cited by the agency in support of the conclusion that there was "substantial and probative evidence" in Simko's file that his marriage to Terry was fraudulent requires the drawing of inferences to reach the conclusion that Terry's and Simko's marriage was not legitimate.  The Salyer Report's conclusion that it is likely and probable Simko committed marriage fraud might have provided a reasonable basis from which the agency could infer that Simko's marriage to Terry was a sham, but the

16

Report's conclusions fall well short of affirmative evidence that Simko's marriage to Terry was not <u>bona</u> <u>fide</u>.

The fact that the agency cited no direct evidence that Simko's marriage to Terry was fraudulent in the agency's NOID makes it arbitrary and capricious for the agency to have concluded that there was "substantial and probative evidence" in Simko's file that he had committed marriage fraud.  Although circumstantial evidence is generally entitled to the same weight as direct evidence, <u>see</u> <u>United States v. MacPherson</u>, 424 F.3d 183, 190 (2d Cir. 2005), the BIA has established a different rule for purposes of ascertaining whether there is "substantial and probative evidence" that the beneficiary of an I-130 Petition has committed marriage fraud, <u>see</u> <u>Matter of Tawfik</u>, 20 I. & N. Dec. at 168.  In particular, the BIA held, in a precedent decision, that "a reasonable inference <u>does</u> <u>not</u> rise to the level of substantial and probative evidence requisite to the preclusion of approval" of an I-130 Petition.  <u>Matter of Tawfik</u>, 20 I. & N. Dec. at 168 (emphasis added).  In the decades since <u>Matter of Tawfik</u> was decided, the BIA has maintained this policy of requiring direct evidence of fraud in a non-citizen's file to warrant application of the marriage fraud bar.[8]  <u>See, e.g.</u>, <u>In re: Abdulla Hassim</u>, A72-657-963, 2006 WL 3922236 (BIA Dec. 28, 2006) (unpublished decision) (noting that "[i]nadequate evidence and negative inferences do not meet" the substantial and probative evidence standard).

_____

[8] Further indication that <u>Matter of Tawfik</u> is a valid statement of BIA policies is provided by the fact that <u>Matter of Tawfik</u> was cited by the BIA in the decision denying Karolina Simko's I-130 Petition. Specifically, the BIA cited <u>Matter of Tawfik</u> for the proposition that "[e]vidence of marriage fraud must be substantial and probative and must be documented in the alien's file."  A.R. 4.  The USCIS decision denying plaintiffs' I-130 Petition also cited <u>Matter of Tawfik</u> for this statement of law.  <u>See</u> A.R. 9 (noting that, per <u>Matter of Tawfik</u>, evidence of fraud "should be contained in the alien's file and be substantial and probative").

At oral argument, defendants did not dispute that the BIA has an established policy of defining substantial and probative evidence of fraud as <u>affirmative</u> evidence of fraud, as articulated in <u>Matter of Tawfik</u>.  Instead, defendants argued that the agency did not act arbitrarily and capriciously when the agency concluded that Simko's file contained affirmative evidence of fraud.  The court disagrees.  As noted above, the Administrative Record is wholly devoid of direct evidence that Simko's marriage to Terry was fraudulent.[9]  To be sure, much of the circumstantial evidence cited by the agency is suggestive.  It might even be reasonable to infer, on the basis of that circumstantial evidence, that Simko entered into his marriage with Terry for purposes of obtaining an immigration benefit.[10]  But the BIA has an established policy that reasonable inferences do not "rise to the level of substantial and probative evidence requisite to the preclusion of approval" of an I-130 Petition.  <u>Matter of Tawfik</u>, 20 I. & N. Dec. at 168.  Because the BIA has this policy, and because Simko's file does not contain affirmative evidence that

_____

[9] USCIS understood that the evidence that the marriage between Simko and Terry was fraudulent was thin, and in fact, it sought more evidence during the course of its consideration of Karolina Simko's I-130 Petition.  When the officer investigating Karolina Simko's I-130 Petition filed a new Fraud Referral Sheet, he noted that he was making the referral because (1) Terry's I-130 Petition and Simko's prior I-485 Application were "only denied for Lack of Evidence" (<u>i.e.</u>, they were not denied because the agency made a determination that the marriage between Simko and Terry was fraudulent), and (2) he "hoped investigation [into the marriage fraud ring] is now concluded with stronger evidence [Terry] admitted to fraud in order to support a 204(c) denial."  A.R. 292.  FDNS chose to close the inquiry on the basis of a "previous entry," <u>id.</u> at 293, presumably the Salyer Report, without having received the possible direct evidence it requested.

[10] Of course, the evidence in the Administrative Record could reasonably support the drawing of inferences in Simko's and Terry's favor, instead.  For example, a 2010 report on the Ohio/Kentucky marriage fraud ring contains a list of people associated with the ring, and neither Simko's nor Terry's name is on the list.  <u>See</u> A.R. 298.  Furthermore, there is no evidence in the Record that either Simko or Terry was ever arrested, charged, or indicted for marriage fraud.  Finally, the Salyer Report indicates that the law enforcement officer who explained why the TECS search produced a "hit" on Terry "was unwilling to provide more specific information regarding either SUBJECT SIMKO or Sherrie TERRY."  A.R. 304.  This could be because the law enforcement officer did not want to jeopardize future arrests, as the officer said.  <u>See id.</u>  But the officer's failure to provide more specific information about Simko or Terry could also be because he had already provided all the information he had about Simko or Terry, namely that Terry's name showed up on a spreadsheet maintained by a member of the marriage fraud ring.

his marriage to Terry was fraudulent, the agency's conclusion that Simko's file contained "substantial and probative evidence" that his marriage to Terry was fraudulent lacked "a rational connection between the facts found and the choice made," Karpova, 497 F.3d at 268, and "[ran] counter to the evidence before the agency," Westchester, 802 F.3d at 431.  Thus, it was arbitrary and capricious and an abuse of discretion for the agency to conclude that there was "substantial and probative evidence" of marriage fraud in Nazar Simko's file.  See 5 U.S.C. § 706(2)(A).

2.      Failure to Rebut the Agency's Marriage Fraud Determination

Even assuming, arguendo, that there was substantial and probative evidence of fraud contained in Simko's file, however, the agency acted arbitrarily and capriciously when it determined that the evidence submitted by Karolina Simko to rebut the agency's view that the marriage between Nazar Simko and Terry was fraudulent "failed to overcome the grounds for denial."  A.R. 9.  To be sure, the evidence submitted by Karolina Simko confirming the bona fide nature of the marriage between Nazar Simko and Terry is less than the evidence that documents the bona fide nature of the marriage between Karolina and Nazar Simko.  But the lack of evidence related to Simko's marriage to Terry must be viewed in light of the circumstances of that marriage:[11] Simko and Terry have maintained for years that they did not have a shared lease, utility bills, car insurance policy, or other joint documents because they lived with Terry's mother, and neither of them worked.  Critically, Terry's mother and sister confirm in sworn

_____

[11] It is perhaps because the BIA recognizes that, under circumstances like these, it is difficult to prove that a marriage is legitimate that the BIA has repeatedly stated in unpublished decisions that "the failure to produce affirmative evidence of the bona fides of the marriage, by itself, is not sufficient to establish that the marriage is a sham marriage."  In Re: Raed I.Y. Zamara, A087-041-252, 2009 WL 5252804 at *1 (BIA Dec. 10, 2009).

affidavits[12] that Terry and Simko resided with them for more than a year as husband and wife and that the marriage was bona fide. See A.R. 70-71. Terry's and Simko's cohabitation with Terry's mother is corroborated by postal checks performed by USCIS in connection with Terry's I-130 Petition and Simko's I-485 Application, see A.R. 339 ("Postal checks do indicate that both the beneficiary and petitioner receive mail at [Terry's mother's] address."), and the affidavits' contention that Simko's and Terry's marriage was bona fide is supported by documentary evidence in the form of their marriage license, family photos, phone bills in Simko's name sent to the marital address, and Western Union money transfers from Simko to Terry, see A.R. 58-69. Finally, Simko and Terry themselves both still maintain—and submitted sworn affidavits to the agency stating—that they entered into their marriage in good faith and not for purposes of conferring an immigration benefit on Simko, and that their marriage fell apart because of Terry's drug addiction. See A.R. 54-57, 63-64; see also A.R. 65 (letter confirming Terry was in treatment for opiate dependency). There is no direct evidence in the record that contradicts Simko's and Terry's account of their marriage.

The evidence submitted by Karolina Simko to rebut the agency's conclusion that Nazar Simko's marriage to Terry was fraudulent—and in particular, the affidavits from Terry, Terry's mother, and Terry's sister asserting that the marriage was bona fide— distinguish this case from many of the cases in which courts have upheld USCIS's application of the section 1154(c) marriage fraud bar. See, e.g., Koffi, 487 Fed. Appx. at 661 n.1 (affirming application of the section 1154(c) marriage fraud bar in a case

---

[12] In fact, Terry's mother has consistently asserted for many years that Simko and Terry lived with her while they were married. In addition to submitting sworn affidavits on Simko's behalf in 2009 and 2013, see A.R. 70, 518, Terry's mother attended a USCIS interview with Simko in 2007 and told the interviewer that Simko and Terry lived with her, see A.R. 341.

where "the record contains not a single affidavit from a neighbor, friend, or acquaintance" and there was evidence connecting both plaintiff and his wife to a marriage fraud ring); Ghaly v. I.N.S., 48 F.3d 1426, 1427-28 (7th Cir. 1995) (affirming application of the section 1154(c) marriage fraud bar in a case where the ex-wife signed an affidavit stating she married the non-citizen for a fee so he could become a permanent resident); Ruiz v. Dep't of Homeland Sec., No. 3:09-cv-95 (CFD), 2010 WL 3257641 at *4 (D. Conn. Aug. 16, 2010) (noting that plaintiffs seeking to establish the validity of a marriage "offered only photographs and unsworn letters in support," which failed to rebut extensive direct evidence that the marriage was a fraud).

Although the Administrative Record indicates that "[a]ll of the affidavits were reviewed and accorded the proper weight," the agency nonetheless concluded that the information submitted by Karolina Simko "failed to overcome the grounds for denial." A.R. 9.  In particular, the agency noted that the affidavits by Simko, Terry, Terry's mother, Terry's sister, and Simko's parents "failed to mention, let alone comment on how it would be impossible or even unlikely [Simko] and others were involved in the Ohio marriage fraud ring."  Id.  In making this determination on these grounds, the agency abused its discretion.  Karolina Simko's burden was to prove, by a preponderance of the evidence, that Nazar Simko's marriage to Terry was not fraudulent.  She should not have been penalized for the fact that the affidavits she submitted did not address specific topics, nor should she have been penalized for failing to submit evidence that simply does not exist due to the nature and circumstances of Simko's and Terry's marriage.

It is worth remembering that, from Karolina Simko's point of view, she was asked to prove a negative:  that Simko's and Terry's marriage was not fraudulent.  She did that as best she could by submitting sworn affidavits that attested the marriage between Simko and Terry was <u>bona</u> <u>fide</u>, and that explained the absence of other forms of documentary evidence, such as a shared lease, that could have helped establish the legitimacy of the relationship.  The affidavits might have been stronger if they included additional detail, and the agency was certainly entitled to give the affidavits less weight because of that fact.  However, given that the agency's evidence that the marriage was fraudulent consisted primarily of negative inferences drawn from the circumstances of Simko's and Terry's marriage, and that Karolina Simko's rebuttal evidence included sworn affidavits from Simko, Terry, Terry's mother, Terry's sister, and Simko's parents attesting that the marriage between Simko and Terry was <u>bona</u> <u>fide</u>, as well as several forms of supporting documentary evidence, it was not rational for the agency to conclude that the evidence submitted by Karolina Simko failed to carry her burden of rebuttal.  <u>See</u> <u>Karpova</u>, 497 F.3d at 268.  Although the court is mindful of the deference that is due to agency determinations, the action taken by the agency in this case was arbitrary and capricious and an abuse of discretion.  <u>See</u> 5 U.S.C. § 706(2)(A).

D.    <u>Relief</u>

Having concluded that the agency acted arbitrarily and capriciously when it determined that substantial and probative evidence in Nazar Simko's file indicted that his marriage to Sherrie Terry was fraudulent and, alternatively, that it was arbitrary and capricious for the agency to decide that Karolina Simko failed to carry her burden of rebutting the agency's conclusion that Nazar Simko's marriage to Terry was not <u>bona</u>

fide, the court must award appropriate relief.  Plaintiffs ask the court to direct the agency to approve their I-130 Petition or, in the alternative, to order the agency to reconsider its denial "in light of the entire record and correct legal standard."  Pls.' Mem. in Supp. of Mot. for Summ. J. at 23 (Doc. No. 26-2).  Although defendants did not brief the question of appropriate relief, at oral argument defendants argued that, should the court conclude the agency's decision was unlawful, the court should remand the case to the agency with directions to reconsider its decision.  The court concludes that there are no open questions for the agency to reconsider, and therefore remands the case to the agency with directions to grant plaintiffs' I-130 Petition.

In making this decision, the court is mindful that it cannot "intrude upon the domain which Congress has exclusively entrusted to an administrative agency."  I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002) (internal citations and quotation omitted). For this reason, when a court determines that an agency has acted contrary to law, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Id.  However, the court is empowered to "compel agency action unlawfully withheld," see 5 U.S.C. § 706(1), and this court is not the first to decide that, under certain circumstances, the agency's unlawful denial of an I-130 Petition warrants the remanding of the case with directions to grant the Petition, see, e.g., Sook Young Hong v. Napolitano, 772 F. Supp. 2d 1270, 1283 (D. Haw. 2011) ("There being no basis for denying the I-130 Petition, it should be granted on remand."); Messina v. USCIS, No. Civ. A. 05CV73409DT, 2006 WL 374564 at *7 (E.D. Mich. Feb. 16, 2006) (same); cf. Singh v. Holder, 558 Fed. Appx. 76, 81 (2d Cir. 2014) (remanding a case with directions to the agency to terminate plaintiff's removal proceedings and noting that

courts "are not strictly bound to [the] ordinary remand rule when it is clear that remand would be futile").

Three additional facts persuade the court that remanding the case with directions to grant plaintiffs' I-130 Petition is the appropriate remedy in this matter.  First, the statute governing I-130 Petitions makes clear that the agency is required to grant all I-130 Petitions that are filed by eligible petitioners on behalf of immediate relatives, so long as the immediate relative is not disqualified by operation of the marriage fraud bar or another restriction.  See 8 U.S.C. § 1154(b) (noting that "[a]fter an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition").  Thus, when there is not substantial and probative evidence of marriage fraud in a beneficiary's file, the agency does not have discretion to deny an I-130 Petition filed by an eligible petitioner on that beneficiary's behalf.  This fact makes agency consideration of I-130 Petitions fundamentally different from agency decisions in other immigration-related contexts, such as whether to grant asylum, in which the decision is committed to the agency's discretion by law.  See Orlando Ventura, 537 U.S. at 13 (noting that the decision to grant asylum is committed to the Attorney General's discretion).  Because the agency does not have discretion to deny a meritorious I-130 Petition, courts do not intrude on the domain "exclusively entrusted to an administrative agency," see id. at 16, when they order the agency to grant eligible I-130 Petitions.

Second, it is unlikely the record in this case would change if the agency was given an opportunity to conduct further investigation into the merits of plaintiffs' I-130

Petition.  In this respect, the court notes that, following the interview with Karolina and

Nazar Simko about their I-130 Petition in 2012, the interviewing officer referred plaintiffs'

I-130 Petition to FDNS for a second investigation into Simko's marriage to Terry.  See

A.R. 291-93.  The USCIS Officer who made the fraud referral specifically referenced the

Salyer Report, but noted that he was requesting an additional fraud investigation

because he wanted "stronger evidence [Terry] admitted to fraud in order to support a

[marriage fraud] denial" of Simko's I-130 Petition.  Id. at 292.  FDNS appears to have

closed this referral without taking further action, noting that there was a "previous entry"

(presumably the Salyer Report) on this matter.  Id. at 293.  Because the agency already

had a chance to conduct a thorough investigation into Simko's marriage to Terry, and in

fact made a fraud referral related to Karolina Simko's I-130 Petition, the court does not

believe that the grant of additional investigatory time is warranted or would meaningfully

change the record in this case.

Finally, the court notes that Karolina Simko filed her I-130 Petition on behalf of

Nazar Simko in June 2011.  See A.R. 110.  In other words, plaintiffs have been waiting

for a final decision on their I-130 Petition for more than four years.  Because there are

no longer any valid, open questions to be decided in connection with plaintiffs' I-130

Petition, there is little to be gained from allowing the agency to reconsider its decision

denying plaintiffs' I-130 Petition, and what little might be gained is outweighed by the

burden on plaintiffs if the court remanded the case without directing the agency to

accord plaintiffs the relief to which they are entitled.  Although the court is mindful of the

general need to allow agencies to conduct additional investigation or proffer further

explanation when a court finds agency action to be unlawful, the court concludes that

25

additional time and effort would not be productive in this case.  Because the

Administrative Record contains insufficient grounds for denying plaintiffs' I-130 Petition,

the agency is directed to grant plaintiffs' I-130 Petition on remand.

## V.    CONCLUSION

For the forgoing reasons, plaintiffs' Motion for Summary Judgment (Doc. No. 26)

is **GRANTED**, and defendants' Motion for Summary Judgment (Doc. No. 27) is

**DENIED**.  The decision of the agency is reversed, and the case remanded with

directions to grant Karolina Simko's I-130 Petition.

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of December 2015.


 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge